UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROLAND ONTIVEROS and MARTHA ALVAREZ on Behalf of Themselves and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 5:21-cv-00016 |
| | § | JURY TRIAL DEMANDED |
| LANDRY'S, INC., LANDRY'S SEAFOOD INN & OYSTER BAR – SAN ANTONIO, INC., and SALTGRASS, INC. D/B/A SALTGRASS STEAKHOUSE, | § § § § | |
| Defendants. | § § | |

**PLAINTIFFS' ORIGINAL COLLECTIVE ACTION COMPLAINT**

1.      The case implicates Defendants Landry's Inc.'s, Landry's Seafood Inn & Oyster Bar – San Antonio, Inc.'s, and Saltgrass, Inc. d/b/a Saltgrass Steakhouse's ("Defendants" collectively) violations of the Fair Labor Standards Act's ("FLSA") tip credit and subsequent underpayment of their employees at the federally mandated minimum wage.  Plaintiffs bring this case as a collective action under the FLSA, 29 U.S.C. 216(b) on behalf of themselves and on behalf of all similarly situated workers.

2.      Defendants pay their tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provision of the FLSA. Under the tip-credit provision, an employer of tipped employees may, under certain circumstances, pay its employees less than the minimum wage rate by taking a "tip credit" against the minimum wage requirement based upon the amount of tips the employees received from customers. *See Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 721 (W.D. Tex. 2010)

1

3.       However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m).  An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").  That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4.       Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as kitchen staff. *See, e.g., Bernal v. Vankar Enter., Inc*., 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008); *see also Myers v. Copper Cellar Corp*., 192 F.3d 546, 551 (6th Cir. 1999)(for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014)("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)). "Where a tipped employee is required to contribute to a tip pool that includes employees who do not customarily and regularly receive tips, the employee is owed the full $7.25 minimum wage and reimbursement of the amount of tips that were improperly      utilized      by      the      employer."      DOL      Fact      sheet      #15, https://www.dol.gov/whd/regs/compliance/whdfs15.pdf

5.      Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA).  *See* 29 U.S.C. 203(m).

6.      Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation.  *See, e.g., Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work.").

7.      Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Fast v. Applebee's Int'l, Inc*., 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time.").

8.      Defendants' violated the FLSA in the following respects:

   a.  **Violation for failure to inform:**  Defendants failed to correctly inform Plaintiffs of the desire to rely on the tip credit to meet its minimum wage obligations.  In fact, Defendants failed to inform Plaintiffs of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

   b.  **Violation for making illegal deductions that reduced the direct wage of Plaintiffs below the minimum required hourly wage for tipped employees:** Plaintiffs were required to purchase certain clothing to work for Defendants, which reduced their wages below the minimum hourly wage required for tipped employees.  Plaintiffs were also required to perform training at home without pay, which reduce their hourly rate below $2.13 per hour.

c.   **Violation for performing work unrelated to tipped occupation:** Plaintiffs were required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, setting up garish shelves, preparing salad and wait stations, filling condiments, cleaning ledges, dusting, mopping, washing dishes, washing trays, and washing appliances.

d.   **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Plaintiffs were required to perform greater than 20% of their time in performing non-tip producing side work, including, but not limited to, general cleaning of the restaurant, cleaning tables, rolling silverware, refilling condiments, setting up tables, sweeping floors, and cleaning and stocking the serving line.

9.      As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiffs and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Defendants must account for the difference between the wages paid to Plaintiffs and all similarly situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10.      This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq.*

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.  In particular, Plaintiffs worked in this District and were denied the wages they were entitled under the FLSA in this District.

## PARTIES AND PERSONAL JURISDICTION

12.      Plaintiff Roland Ontiveros is an individual residing in San Antonio, Texas.  His written consent to this action is attached hereto as Exhibit "A."

13.      Plaintiff Martha Alvarez is an individual residing in New Braunfels, Texas.  Her written consent to this action is attached hereto as Exhibit "B."

4

14.     The FLSA Class Members are all current and former waiters and bartenders employed by Defendants at a Saltgrass restaurant for at least one week during the three year period prior to the filing of this action to the present.

15.     Defendant Landry's Inc. is a foreign corporation doing business in Texas.  Said defendant may be served with process by serving its registered agent - Steven L Scheinthal - at 1510 West Loop South, Houston, Texas 77027.

16.     Defendant Landry's Seafood Inn & Oyster Bar – San Antonio, Inc. is a Texas corporation.  Said defendant may be served with process by serving its registered agent - Steven L Scheinthal - at 1510 West Loop South, Houston, Texas 77027.

17.     Saltgrass, Inc. is a Texas corporation.  Said defendant may be served with process by serving its registered agent - Steven L Scheinthal - at 1510 West Loop South, Houston, Texas 77027.

18.     This Court has personal jurisdiction over Defendants because each business does business in Texas, hires Texas residents, contracts with Texas residents, owns or leases property in Texas, and because Defendants are headquartered in Texas.

## **COVERAGE**

19.     At all material times, Defendants have been employers within the meaning of the FLSA.  29 U.S.C. § 203(d).

20.     At all material times, Defendants have been enterprises in commerce or in the production of goods for commerce within the meaning of the FLSA.  29 U.S.C. § 203(s)(1).

21.     At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

22.     At all material times, Plaintiffs and Class Members were employees engaged in the commerce or the production of goods for commerce.

23.     At all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1).  That is Defendants perform related activities through unified operation and common control for a common business purpose.

24.     Defendants operate a nationwide chain of restaurants under the name Saltgrass under the control of the same senior level management.  Indeed, the establishments advertise themselves as a unified entity through the same website - https://www.saltgrass.com/.

25.     Defendants represent themselves to the public as company operating at multiple locations.  They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.

26.     Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

27.     Thus, Defendants formed a "single enterprise" and are liable for the violations of the other.

## FACTS

28.     Defendants operate a nationwide chain of restaurants under the trade name "Saltgrass" throughout the U.S.   Defendants operate in Texas, Alabama, Arkansas, Colorado, Kansas, Louisiana, Missouri, Nebraska, Oklahoma, and other states.

29.     The Saltgrass restaurants are full-service restaurants that employ waiters and bartenders to provide services to customers.

30.     A waiter gathers orders from customers and delivers food and drinks to the customers.

31.     A bartender makes various alcoholic beverages to customers.

32.     Defendants pay their waiters and bartenders less than the federal minimum wage of $7.25 per hour.

33.     Defendants attempted to utilize the tip credit to meet their minimum wage obligation to their waiters and bartenders, including the Plaintiffs and Class Members.

34.     Plaintiff Ontiveros worked for Defendants at the Saltgrass location at the San Antonio Riverwalk.  He worked for Defendants as a waiter from December 2018 to September 2020 and was paid an hourly rate of $2.13 per hour.

35.     Plaintiff Alvarez worked for Defendants at the Saltgrass locations at 16910 US 281 North in San Antonio, at 60 NE Interstate 410 Loop in San Antonio, at the San Marcos location, and that Bee Cave location.  She worked for Defendants from November 2017 to November 2019 and was paid an hourly rate of $2.13 per hour.

36.     The tip credit has a harmful effect on workers that threatens the health of the economy.  Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter large corporations operating restaurants advising of the ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited January 11, 2021).  The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work**. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id*.) (emphasis in original)

37.     Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer how seeks to utilize the trip credit to meet their minimum wage obligations.

38.     In this case, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to provide the Plaintiffs and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

39.     Defendants also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being compensated at the tip credit rate.  While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

40.     These duties include but are not limited to the following: making salads, setting up garish stations, dusting blinds, dusting fans, vacuuming floors, cleaning furniture, mopping floors, cleaning ledges, washing trays, washing dishes, and washing appliances, amongst other activities, that were not related to her tipped duties.

41.     Defendants also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

42.     Specifically, Defendants maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to cleaning tables, refilling condiments, dusting decorations, mopping floors, and setting up tables.

43.     Further, Defendants required Plaintiffs and the Class Members to perform non-tipped producing work prior to the opening of the restaurant and after the restaurant closed.  Indeed, Defendants required the Plaintiffs and Class Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties.  Likewise, Defendants required the Plaintiffs and Class Members to remain at the restaurant after it had closed for business and there was no opportunity to earn tips, to perform manual labor cleaning duties.  At times, they spent 30 minutes to three hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tipped producing work.

44.     However, Defendants did not pay their tipped employees the full minimum wage rate for this work. The duties that Defendants required Plaintiffs and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

45.     During Plaintiffs' and the Class Members' employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

46.     When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

47.     Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

48.     Defendants did not track or record the amount of time their tipped employees spent performing non-tipped work, even though Defendants were capable of doing so.  Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments but Defendants failed to track to the specific tasks for Plaintiff.

49.     Defendants use a point-of-sale system to record hours worked by their tipped employees.  Defendants then analyze the information collected by this system, including the labor costs at each of the restaurants. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks for Plaintiffs and the Class Members.

50.     In the point-of-sale system, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

51.     However, Defendants did not allow their waiters and bartenders to clock-in at the full minimum wage rate when performing non-tipped work described in this Complaint.

52.     Defendants' managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

53.     Moreover, Defendants violated the FLSA by not even paying the minimum "tipped" hourly rate.  Defendants required their tipped employees to pay for items for their uniform, including white shirts, blue jeans, belts, and shoes.  These clothing items were required to perform

work for Defendants and were primarily for the benefit and convenience of Defendants. The costs for these items were not reimbursed by Defendants and were approximately $200-$300.

54.    Because Defendants paid their tipped employees at the minimum of $2.13 per hour, any week in which a tipped employee was required to pay for work related expenses for Defendants' business, their compensation fell below the minimum wage rate, thereby negating Defendants' entitlement to claim the tip credit.

55.    In other words, by requiring Plaintiff and the Class Members to pay for these work-related expenses, their hourly rates of pay were reduced by the amount of these uniform costs. As a result, they were not even paid the minimum hourly rate necessary for Defendants to claim the tip credit.

56.    Further, Defendants required the Plaintiffs and Class Members to watch training videos at home without pay.  The training videos typically lasted one hour and included topics such as how to maintain credit card security while working and best practices when handling customers' money at the restaurants.  When including the time spent completing this training, the Plaintiffs and Class Members were paid less than $2.13 per hour.

57.    Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiffs and the Class Members.

58.    As such, Plaintiffs and the FLSA Class Members were not compensated at the federally mandated minimum wage.

59.    Defendants know or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the FLSA. Rather, Defendants knowingly, willfully, and/or with reckless disregard of the law carried and continue to

carry out their illegal pattern and practice regarding their tipped employees. Defendants' method of paying Plaintiffs was not based on a good faith and reasonable belief that its conduct complied with the law.

## REVISED FIELD OPERATIONS HANDBOOK AND NEW DUAL JOBS REGULATION

60.     On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time.  However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference.  *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc*., 354 F. Supp. 3d 976 (W.D. Miss. 2019).

61.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).   After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which becomes effective on March 1, 2021. (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa).

62.     Under the revised regulation, the Department of Labor made clear that an employer may only take a tip credit under the following circumstances:

> consistent with the Department's current guidance, that an employer may take a tip credit for all non-tipped duties an employee performs that meet two requirements. First, the **duties must be related to the employee's tipped occupation**; second, the **employee must perform the related duties contemporaneously with the tip-producing activities** or **within a reasonable time immediately before or after the tipped activities**.

(*Id*.) (emphasis added).

63.     The Department of Labor provided guidance in the Final Rule about when the tip credit may be taken and provided the following hypothetical:

> consider the following scenario: a hotel bellhop continuously performs tipped duties such as carrying luggage to guests' rooms during a busy 8-hour shift and then works for an additional 2 hours performing related non-tipped duties such as cleaning, organizing, and maintaining bag carts in storage. The 2 hours of related nontipped duties would not be "for a reasonable time" after the performance of tipped duties. **Accordingly, the bellhop was engaged in a tipped occupation (bellhop) for 8 hours and a non-tipped occupation (cleaner) for 2 hours.**

(*Id.*) (emphasis added).

64.     The Department of Labor explained that there is no bright line rule as to when an activity is considered performed within "a reasonable time" before or after the tipped activities. Instead, the circumstances of the job determine the reasonableness.

> the allowance for related duties performed "for a reasonable time immediately before or after" a tipped duty creates a sufficiently intelligible distinction between employees engaged in tipped occupations and non-tipped occupations. It is true that this limit does not create as bright a line as a firm cap on the amount of time an employee may spend on particular duties (although the 80/20 approach creates significantly greater uncertainty in other ways as discussed below). But the concept of reasonableness is a cornerstone of modern common law and is familiar to employers in a variety of contexts… **Reasonableness balances a flexible accounting of circumstances with a sufficiently definite limit on acceptable conduct in those contexts**. This flexible approach is appropriate to apply to the question of whether particular duties are a part of an employee's tipped occupation.

(*Id.*) (emphasis added).

65.     Under the revised regulation, Defendants' pay policies violate the law.   First, Defendants illegally took a tip credit for the time spent performing tasks not contained in the O*NET Task list, including but not limited to, the time spent by Plaintiffs and the Class Members cleaning ledges, dusting walls, dusting blinds, dusting fans, washing trays, and washing appliances.

66.     Second, Defendants illegally required Plaintiffs and the Class Members to perform non-tip producing work that was not contemporaneous with their duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties.  That is because Defendants required Plaintiffs and the Class Members to perform non-tipped work 30 minutes to three hours before the restaurants were open for business or after they were closed, when the restaurants did not have customers and there was no opportunity to earn tips.  During this time, Defendants paid below the minimum wage rate and forced the Plaintiffs and Class Members to perform non-tip producing duties such as making salads, setting up garish stations, dusting blinds, dusting fans, vacuuming floors, cleaning furniture, mopping floors, cleaning ledges, washing trays, washing dishes, washing appliances, cleaning tables, refilling condiments, dusting decorations, mopping floors, and setting up tables, amongst other activities.

67.     Given that Defendants failed to comply with the requirements to take the tip credit, Defendants have lost the ability to claim the tip credit and owe Plaintiffs and the Class Members pay at the minimum wage rate of $7.25 per hour for all hours they worked for Defendants.

## COLLECTIVE ACTION ALLEGATIONS

68.     Plaintiffs bring this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all current and former waiters and bartenders employed by Defendants at a Saltgrass restaurant for at least one week during the three-year period prior to the filing of this action to the present.

69.     Plaintiffs have actual knowledge, through conversations with their co-workers that a class of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

70.     The Class Members are similarly situated to Plaintiffs in that they share the same duties and were subject to the same violations of the FLSA.

71.     Like Plaintiffs, the Class Members were not given proper notice of the tip credit provisions, were paid below the tip credit rate of $2.13 per hour, and performed substantial work that was unrelated to their tip producing duties.

72.     Further, the Class Members were, like Plaintiffs, not properly informed of Defendants' intent to utilize the tip credit.

73.     Moreover, the Class Members were also subject to the expenses that either dropped their compensation below the minimum wage.

74.     Plaintiffs and the Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

75.     The names and address of the Class Members of the collective action are available from Defendants' records.   To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

76.     Although the exact amount of damages may vary among the Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

77.     As such, the class of similarly situated Class Members is properly defined as follows:

> **All current and former waiters and bartenders employed by Defendants at a Saltgrass restaurant for at least one week during the three-year period prior to the filing of this action to the present.**

## CAUSES OF ACTION

### VIOLATION OF THE FAIR LABOR STANDARDS
### FAILURE TO PAY THE MINIMUM WAGE

78.     Plaintiffs incorporate the preceding paragraphs by reference.

79.     This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wages. *See* 29 U.S.C. § 206.

80.     Plaintiffs and the Class Members were paid hourly rates less than the minimum wage while working for Defendants.

81.     Plaintiffs and the Class Members were not exempt from the minimum wage requirements of the FLSA.

82.     Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiffs and the Class Members being paid less than the minimum wage rate.  Defendants' violations of the FLSA were willful and not based on a good faith belief that their conduct did not violate the FLSA.

## WAGE DAMAGES SOUGHT

83.     Plaintiffs and the Class Members are entitled to receive the difference between the minimum wage rate and the tip credit adjusted minimum wage for each hour they worked.

84.     Plaintiffs and the Class Members are entitled to reimbursement for all illegal deductions and withheld tips.

85.     Plaintiffs and the Class Members are entitled to reimbursement for all work related expenses they paid.

86.     Plaintiffs and the Class Members are entitled to liquidated damages.

87.     Plaintiffs and the Class Members are also entitled to recover their attorney's fees and costs as required by the FLSA.

## JURY DEMAND

88.      Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend

VII, and FED R. CIV. P. 38(a), Plaintiffs hereby demands trial by jury.

## PRAYER FOR RELIEF

89.      For these reasons, Plaintiffs respectfully request that judgment be entered in their favor

awarding Plaintiffs and the Class Members:

a.   Minimum wage compensation unadulterated by the tip credit;

b.   Liquidated damages;

c.   All misappropriated funds including all tips, expenses, and wages wrongfully withheld;

d.   Reasonable attorney's fees, costs, and expenses of this action;

e.   Pre and post judgment interest; and

f.   Such other and further relief to which Plaintiff and the Class Members may be entitled, both in law and in equity.

Respectfully submitted,

HODGES & FOTY, L.L.P.

By: /s/ Don J. Foty
    Don J. Foty
    DFoty@hftrialfirm.com
    Texas Bar No. 24050022
    4409 Montrose Blvd, Ste. 200
    Houston, TX 77006
    Telephone: (713) 523-0001
    Facsimile: (713) 523-1116

   AND

   THE LAZZARO LAW FIRM, LLC

    Anthony J. Lazzaro*
    Ohio Bar No. 0077962
    Chastity L. Christy*
    Ohio Bar No. 0076977

Lori M. Griffin*
Ohio Bar No. 0085241
920 Rockefeller Building
614 W. Superior Avenue
Cleveland, Ohio 44113
Telephone:     216.696.5000
Facsimile:     216.696.7005
Email:    anthony@lazzarolawfirm.com
Email:    chastity@lazzarolawfirm.com
Email:    lori@lazzarolawfirm.com

*Will apply for admission pro hac vice

ATTORNEYS FOR PLAINTIFFS AND CLASS
MEMBERS